Tucker, P.
I altogether concur in the sentiment expressed by the counsel for the appellee, that, in the construction of contracts, we should look sedulously to the real intention of the parties, as evinced by the whole instrument, instead' of being tied down to the literal terms of a particular clause. Adopting this rule, let us look into this contract, and see what was the real design of the contracting parties.
Moffett, in November 1815, made a lease of 1000 acres of land to Frazier, for the term of ten years, at a certain rent; but as he contemplated a sale of the land, provided he could do so advantageously, it was provided between the parties, that if he should be able to sell for 10,000 dollars, Frazier should surrender the possession at the end of the then current year. It is obvious from the provision, that it was introduced for the benefit of Moffett, not for the advantage of Frazier, who being unwilling to part with a lease which he doubtless deemed profitable, else he would not have taken it, insisted upon a sale for at least 10,000 dollars, before he would hold himself bound to surrender. This lease Frazier transferred to Dudley, and Dudley, afterwards, to Estill and Coyner. In the transfer from Frazier, there is ajprovision for the surrender of the possession, similar to that in the lease from Moffett to himself. But in the deed from Dudley to Estill and Coyner, instead of such provision, other language is used : Estill and Coyner agreed to pay the said Dudley two hundred dollars annually as long as the lease should last, but if Moffett should sell the property “ agreeably to the original article between him and Frazier, this article of course should expire.” Now, this expression is not equivalent (nor was it so designed) to a declaration, that the lease should expire absolutely upon the completion of the sale *567 by Moffett. It was a mere reference to the fact that the sale would, according to the original articles, probably terminate the lease, and then the contract between Dudley and Estill and Coyner would of course expire. It was not the interest of Estill and Coyner to terminate their own lease, before the rights of Frazier or Dudley, under their contracts, were terminated. And Dudley, on his part, had no motive for desiring to defeat and terminate the lease of his under lessees, before the original lease was at an end. He had sold, and they had bought, his lease out and out, and by the first part of the articles his whole interest was parted with lor the residue of the term of ten years. If from any cause, the original lease continued during the whole term, Estill and Coyner were fully entitled to it. And this phrase was introduced into the contract, merely to attest the intention and understanding of the parties, that the possession and interest of the under lessees were to depend upon the continuance or the termination of the original lease to Frazier. In the deed to Betty Curtis, the idea is carried out more clearly, indeed; but I am persuaded that the intention was the same in both cases. If, ibr instance, after the sale by Moffett, he had waived the surrender of the len.se by Frazier, and if his vendee had also waived it, the lease would not have been defeated or terminated. The lease to Frazier does not provide, that immediately upon the sale the lease shall cease and be void, in which case it would instantly and ipso facto have been at an. end; but it provides for a surrender, in that event, by the lessee. Until that surrender was made and accepted, or at least was demanded, the lease continued in full force; and if the parties waived it, the lease was not impaired. Even if the lessee had refused to surrender, though he would have been liable in covenant, yet he could not (I incline to think) have been ousted by ejectment, without a previous demand. But certain it is, that if Moffett and his vendee waived *568 the surrender, the lessee was still in under his original lease. Could it then be contended, that although the lease was not terminated by surrender, but was continued by a waiver of it by those entitled, Estill and Coyner’s term was at an end, and their title gone f Could Dtidley, who had assigned to them his whole lease have successfully claimed the possession from them for the unexpired residue of the ten years lease ? Might they not well have said, that the true intent of the contract was, that he was to have the lease so long as it continued, and that until the surrender by those under whom they claimed, he was entitled to the possession ? To me it appears obvious,—and that Estill and Coyner’s rights as lessees, could not be terminated, unless by their own voluntary surrender, or the surrender of those under whom they claimed, or by a demand of the possession on the part of the lessor or his vendee. If this be the state of the case, then it is obvious, that Estill and Coy tier are liable upon this covenant for the rents until the termination of the lease by the entry of Moffett or his vendee.
The verdict of the jury has expressly negatived the fact of such an entry, by finding for the plaintiff upon the plea alleging an eviction: and hence I infer, that the plaintiff is entitled to a recovery.
The verdict upon the other pleadings, however, creates some embarrassment; for the jury find for Dudley, if Moffett’s sale was not within the contract, but they find for the defendant, if it was. Now, this finding is upon the two last pleas, only; for on the other two, the verdict is unconditionally for the plaintiff. And the verdict not only goes out of the issue as to the third plea, and submits a question of law upon the two pleas, without responding to the fact, but in truth and in fact both of those pleas are insufficient and defective. Had they alleged the termination of the lease, without more saying, they might have been sustained; but they un *569 dertake to set forth by what, and in what manner, it was determined. And if I have been right in the view I have taken of the case, the facts set forth shew no termination. They only set forth the sales made by Moffett, which did not terminate the lease, but only gave a right to terminate it. They fall short, therefore, of what is necessary to constitute a good bar. Indeed, upon the demurrer to the replication to the last plea, judgment ought to have been given, that that plea was naught. The third plea was equally defective, and the verdict being for the plaintiff upon the only good pleas, judgment cannot be entered for the defendant upon his bad pleas, whether the sale was within the meaning of the contract or not.
There must, therefore, be a reversal of the judgment, the verdict set aside, and a repleader awarded; upon which the plaintiff may demur to the faulty pleas. 1 Chitt. Plead. 694.
The court, however, thinks it not improper to say that it considers the sale of Moffett as substantially within the contract.